The DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, Plaintiff,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Defendants.

Union Pacific Railroad Company and Southern Pacific Company, Intervening Defendants.

Civ. A. No. 8046.

United States District Court
D. Colorado.
April 20, 1964.

T. A. White, Ernest Porter, Denver, Colo., Dennis McCarthy, Salt Lake City, Utah, for plaintiff.

Robert W. Ginnane, Gen. Counsel, Robert S. Burk, Atty., Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Lawrence M. Henry, U. S. Atty., for the District of Colorado, Denver, Colo., for the United States.

F. J. Melia, William P. Higgins, Omaha, Neb., Frank E. Barnett, Covington Hardee, New York City, E. G. Knowles, Denver, Colo., for Union Pacific Railroad Co., intervening defendant; Clark, Carr & Ellis, Charles D. Peet, G. Clark Cummings, New York City, of counsel.

Alan C. Furth, Robert L. Pierce, San Francisco, Cal., for Southern Pacific Company, intervening defendant.

Before SETH, Circuit Judge, and ARRAJ and DOYLE, District Judges.

SETH, Circuit Judge.

This is an action to set aside and to enjoin enforcement of an order entered by the Interstate Commerce Commission, 317 I.C.C. 469. This order denied plaintiff's petition to modify an earlier order entered in this same docket by the Commission in 1923, 76 I.C.C. 508. Both The Denver and Rio Grande Western Railroad Company, the plaintiff herein, and the Union Pacific Railroad Company, an intervening defendant here, were in-

tervenors in the original proceedings. The Southern Pacific Company was then the petitioner. The Commission in the 1923 order authorized the control by the Southern Pacific Company of the Central Pacific Railway Company, subject to several express conditions. One of these conditions, condition (e), is here involved.

The petition of the plaintiff to the Commission requested that the original proceedings be reopened for further consideration and for a modification of the order entered in 1923. This petition was directed to condition (e) of the Commission's original order, and asserted that because of the change in circumstances since 1923 the condition now causes unreasonable and unlawful discrimination against plaintiff. The petition was later amended to allege that an agreement between the intervening defendants covering the same subject was likewise discriminatory.

Hearings were held upon the plaintiff's petition before an Examiner who filed a report and order recommending the modification of condition (e). The Southern Pacific and the Union Pacific filed exceptions to the Examiner's recommended report and order, and a hearing was had before the Commission. The majority of the Commission reached a different result than did the Examiner, and refused plaintiff relief. A dissenting report was filed by five of the Commissioners who felt that condition (e) should be altered.

In order to properly present the issues, it is necessary to first mention several historical facts by way of background. Congress passed in 1862 and 1864 the Pacific Railroad Acts, 12 Stat. 489 and 13 Stat. 356. These Acts contemplated the construction by private corporations of a transcontinental railroad. The Acts provide among other things that the two companies shall not discriminate against each other, that the transcontinental line shall be operated and used for all purposes of communication, travel and transportation, so far as the public and the Government are concerned, as one connected, continuous line. Such a railroad

was constructed by the Central Pacific building east from Sacramento, California, and the Union Pacific building west from Council Bluffs, Iowa. The two lines met near Ogden, Utah, in 1869, and service was commenced. Thereafter the Southern Pacific became the owner of the stock of the Central Pacific and later the Union Pacific acquired a large stock ownership in the Southern Pacific Company. An antitrust action was commenced, and culminated in United States v. Union Pacific R. R. Co., 226 U.S. 61, 33 S.Ct. 53, 57 L.Ed. 124, wherein Union Pacific was ordered to divest itself of its Southern Pacific stock. The Southern Pacific nevertheless remained in control of the Central Pacific, and also had its own southern route to the west coast. However, the Supreme Court in United States v. Southern Pacific Co., 259 U.S. 214, 42 S.Ct. 496, 66 L.Ed. 907, held that this violated the Sherman Act, and the Southern Pacific was directed to terminate its control of the Central Pacific. Before this decision was reached, Congress had passed the Transportation Act of 1920, amending Section 5 of the Interstate Commerce Act. This in part authorized the Interstate Commerce Commission to approve the control of one railroad by another, subject to conditions, and in the event such control was found to be in the public interest. After the decision of the Supreme Court in United States v. Southern Pacific Co., supra, the Southern Pacific Company applied to the Commission pursuant to the new section of the Act for authority to control the Central Pacific. The Commission's decision, Control of Central Pacific by Southern Pacific, Finance Docket No. 2613, 76 I.C.C. 598, resulted. The Commission, as indicated above, attached several conditions to its consent to such control, and we are here concerned with plaintiff's attack on condition (e) thereof. This condition reads as follows:

"(e) That the Southern Pacific Company shall cooperate with the Union Pacific Railroad Company to secure by active solicitation the routing of the maximum of freight traf-

fic *via* the lines of the Union Pacific Railroad Company and the Central Pacific Railway Company through the Missouri River and Ogden, Utah, as parts of one connected continuous line, between all points in California and Oregon north of and including ·Caliente and Santa Margarita, Calif., and south of and including the Klamath Falls branch and Kirk, Oreg., on the one hand, and points north and west of a line along the northern boundaries of Oklahoma and Arkansas, to the Mississippi River, thence along the Mississippi and Ohio Rivers (but not including intermediate cities on the Ohio River) to Wheeling, W. Va., and thence on a line drawn just east of Pittsburgh, Pa., and Buffalo, N. Y., to Niagara Falls, N. Y.; * * * " (76 I.C.C. at 530).

Other conditions of the Control Order provide that the Union Pacific and the ·Southern Pacific cooperate in maintaining schedules, service, and rates over the ·Central Pacific-Southern Pacific route.

The Rio Grande urges here, as it did before the Commission, that condition (e) of the Commission's order of 1923 and a 1924 contract between the Union Pacific and the Southern Pacific on the same subject are illegal and unlawful because the plaintiff is unduly prejudiced and discriminated against thereby, and further that they are contrary to the Interstate Commerce Act and the Federal antitrust laws. The plaintiff also urges that the proceedings had before the Commission which culminated in its 1963 order, here sought to be set aside, were unduly restricted and narrowed, and that its amended petition was not considered as a complaint proceeding under the Commission's procedures as it should have been.

Since the plaintiff raises the question here as to the proper scope of the administrative proceedings, it is necessary to describe in some detail the issues raised and considered during the proceedings.

The plaintiff, as indicated above, filed a petition with the Commission to reopen the Control Case, supra, for further consideration in the light of present conditions. The plaintiff asserted that the condition (e) now results in unlawful discrimination against it contrary to Sections 3(4) and 15(1) of the Interstate Commerce Act, and it was not "just and reasonable" as required by Section 5 of the Act. Plaintiff asks that condition be modified, and for such other and further relief as the Commission might grant.

The Union Pacific and the Southern Pacific filed motions to dismiss and to Deny and Answer. The Southern Pacific attached a copy of the agreement entered into between it and the Union Pacific in 1924. This agreement, according to the brief of the Commission, was entered into for the purpose of embodying the conditions imposed in the original order in the Control case into a contract stating the parties' common understanding of their meaning.

Following the filing of the motions described above with the contract attached, the plaintiff amended its petition to assert also that this agreement was unlawful for the same reasons that the condition was unlawful. Thereafter the Union Pacific and the Southern Pacific amended their motions to meet the amended allegations of the plaintiff.

In June 1958, the Commission reopened the Control Case. The intervening defendants petitioned for reconsideration of this order of reopening, but the petition was denied. The Order of Reopening recites that the petition to reopen of plaintiff was directed to condition (e) and to the agreement of 1924, and recites further "that there has been presented sufficient justification to warrant the reopening of the proceeding for further consideration of the conditions imposed: * * *." The order portion then states as follows: *"It is ordered,* That the proceeding be, and it is hereby reopened for further consideration and assigned for hearing at a time and place hereafter to be fixed."

The plaintiff was further permitted by the Examiner, at the commencement of the hearing before him, to further amend its petition to assert that condition (e) and the 1924 contract were not "just and reasonable" as required by Section 5(2) (b) of the Act. The attorney for Union Pacific at the outset of the hearing advised the Examiner that the reopening order limited the issues.

The issues decided by the Examiner were generally as follows:

1. He found that condition (e) was imposed to prevent discrimination by the Southern Pacific and was not necessarily imposed in order to carry out the purposes of the Pacific Railroad Act.

2. He found that preferential solicitation, routing and distribution of traffic were occurring and that this violated Sections 3(4) and 15(1) of the Act.

3. He further found that this condition (e) and all supplemental agreements were illegal under Sections 3(4) and 15(1) of the Act. He found that the fact that the preferential solicitation and routing violated the antitrust law should be taken into consideration, although he observed that the Commission might not be the proper agency to enforce such laws.

4. The Examiner recommended a change in condition (e) to eliminate the Union Pacific as what he termed the exclusive connection of the Southern Pacific on traffic to and from the designated territory.

The matter was heard before the entire Commission, 317 I.C.C. 469, and the Commission decided and found:

1. It had the power to reopen the Control Case by virtue of certain authorities it cited and by reason of condition (i) included in the Control Case which contemplated a reopening, and the Commission found further that its power in this respect was not limited to implementing the original order.

2. It found that the evidence did not establish that condition (e) is unjust, unreasonable, or contrary to the public interest.

3. That condition (e) was intended to protect the Overland Route and all the conditions in the Control Case were consistent with the Pacific Railroad Acts, and further that a mere physical connection does not satisfy the Pacific Railroad Acts.

4. That it could not modify condition (e) to conflict with the Pacific Railroad Acts; that it had no evidence upon which to base the adverse effects upon the Union Pacific which could result from a change of condition (e).

5. There was no evidence that condition (e) is causing impairment of the plaintiff's ability to serve.

6. That five of the conditions inserted in the Control Case are a single package.

7. The evidence showed that the plaintiff has prospered in recent years and the only beneficiary of a change in the condition would be the plaintiff, and it is proper to consider such benefits.

8. That the legality of the 1924 agreement and the actions of its parties thereunder were not issues because the proceeding was not a "complaint proceeding."

9. To decide that whether the substance of the condition, if voluntarily carried out, would violate Sections 3(4) and 15(1) of the Act or whether such would violate the antitrust laws would not be decided.

10. The Commission also stated as to the Examiner: "He also made various findings on the allegations of the petitioner as to the legality of condition (e) and the 1924 agreement of the respondents under the antitrust laws and sections 3(4) and 15(1) of the Interstate Commerce Act, and as to the legality of the agreement under section 6(5) of the act. The latter findings go beyond the issues of this proceeding, which is not a complaint proceeding. The legality of the 1924 agreement and the actions of the parties thereunder are not properly for determination herein, nor is it necessary to determine whether, in the absence of the considered condition, the action required thereby would be viola-

tive of sections 3(4) and 15(1) of the Interstate Commerce Act or of the antitrust laws. In our opinion condition (e) is not unduly prejudicial to the Rio Grande within the meaning of section 3(4), or otherwise unlawful, and the only issues properly presented for our determination herein are whether we may lawfully modify that condition and, if so, whether such condition should be modified in the manner requested."

As indicated above the plaintiff's petition after its amendment raised issues on the validity of preferential solicitation under both condition (e) and the 1924 agreement between the Union Pacific and the Southern Pacific. The Southern Pacific injected the agreement into the case when it attached it to its motions. The 1924 agreement had its origin solely in the conditions imposed in the Control Case, and the agreement sets out in full these conditions. The parties obviously intended to enter into an agreement which would embody these conditions in order to put them into operation. The Commission states that the agreement was devised for the "stated purpose of arriving at a common understanding of the meaning of the conditions and for making them reciprocally obligatory, * * *." Thus it would appear that the conditions and the agreement are in reality but two aspects of the same matter, one an edict of a governmental agency and the other the execution of it by the parties to whom it is directed. The content, meaning, and the practice under preferential solicitation in its several forms should be controlling rather than the manner or place where a statement of it is reduced to writing. The Examiner in his control of the scope of the hearing permitted the proof to refer to both condition (e) and the agreement. Also the intervening parties filed motions which questioned the power of the Commission to reopen the matter at all and seeking to narrow the issues. These were argued, and the issues were otherwise fully considered by the Examiner.

The intervening defendants argue at some length on the limiting effect of the Commission's order reopening the Control Case. The contents of this order are described above, and we find no restriction of the issues as the intervening defendants argue. Further, there is no indication in the Report of the Commission that it felt the issues to have been limited by the reopening order.

When the matter came before the entire Commission, it narrowed the issues and separated on a procedural basis its consideration of condition (e) from the agreement. This procedural basis mentioned in its Report was that "this is not a complaint proceeding." By reason of this separation, the Commission stated that matters relative to the agreement and the actions of the parties thereunder were not properly before it. In order to have the matter considered in that context, the plaintiff here would have to commence new proceedings.

The action of the Commission here is similar to the action which it took in Corn and Corn Products From Illinois to Official Territory which later became A. L. Mechling Barge Lines v. United States, Board of Trade of the City of Chicago v. United States, 310 I.C.C. 437. In this cited hearing, the Commission had before it an application for an exception to Section 4 of the Interstate Commerce Act, 49 U.S.C. § 4. The application was set down for hearing, but the Commission did not enter into a general investigation of the lawfulness of the rates under other sections of the Act, nor did the parties resisting the application file a formal complaint under § 13 of the Act, 49 U.S.C. § 13, attacking the lawfulness of the rates. Thus in the initial proceedings the Examiner refused tenders of evidence relating to the validity of the rates under sections of the Act other than Section 4. The Examiner recommended denial of the application; however, the Commission granted it, put the rate in effect, but did not pass on the objections and attacks made on the legality of the rate under the other sections of the Act, which became especially

pertinent since it was approved under Section 4. The Supreme Court in considering this action of the Commission in A. L. Mechling Barge Lines v. United States, 84 S.Ct. 874, held that it was improper for the Commission to refuse to pass on the legality of the proposed rates under other sections of the Act. The Court described the result of the separation of the issues by the Commission as a "splintering" of the proceedings, and pointed out that the contestants would be obliged to await the conclusion of the Section 4 proceeding before raising claims of violations under other sections of the Act, and that "this would be poor administration." The Supreme Court suggests that in a single proceeding all charges of discrimination bearing on the formal Section 4 application should be heard in a single proceeding. The Commission in arguments had suggested that the attacks based on several other sections of the Act would be properly raised in an investigation or complaint proceeding. This suggestion is the same as here made in the case at bar.

The petition here before us raised issues relating to the preferential solicitation and distribution between the Southern Pacific and the Union Pacific. This preferential solicitation was attacked as being improper or illegal under several sections of the Act as well as the antitrust law. The origin and the authority for these practices were contained in both condition (e) and the 1924 agreement. These two items constituted the physical evidence of the authority for the practice, but it was the practice, or the authority for the practice, which was attacked by the plaintiff, and where this authority might be physically found would seem to be of minor importance. Thus in effect there was but one general issue before the Examiner and before the Commission, although in somewhat different context. Thus as in the Mechling Barge case, supra, we have an issue or proposition before the Commission which is attacked on several grounds under the Act. Also in this case we have an action by the Commission limiting the issues on procedural grounds although all issues were in reality presented. In the case at bar, the Examiner developed all the issues raised in the petition and apparently received evidence upon them, while in the Mechling case, supra, the Examiner narrowed the issues and excluded certain evidence. It would appear in the case at bar since the permission was given to amend the petition to relate specifically to the agreement, and since evidence was heard relating to the agreement, and on the conditions and the practices of the intervening defendants relating to such documents, there is a more compelling reason for the Commission to dispose of the entire matter than in the cited case. Here, as in the Mechling Barge case, "[t]o require the parties to begin anew and thus spawn several cases, all of which might have been easily disposed of in the § 4 proceeding, needlessly subjects appellants' claims to the rigors of circumlocution so deadly to effective administrative and judicial processes." We are of the opinion that the validity under the Interstate Commerce Act of the agreement entered into between the Southern Pacific and the Union Pacific in 1924, as well as the actions of the parties to such agreement, should have been passed on by the Commission.

Since the disposition of the proceedings is incomplete, the Order of the Commission is vacated and the action remanded for further proceedings consistent with this opinion.